135 N.J. Super. 315 (1975)
343 A.2d 158
JOSEPH A. MUCCIO, PLAINTIFF,
v.
CLINTON E. CRONIN, ACTING COUNTY PROSECUTOR, DEPUTY ATTORNEY GENERAL IN CHARGE OF PASSAIC COUNTY PROSECUTOR'S OFFICE, BOARD OF CHOSEN FREEHOLDERS OF PASSAIC COUNTY, AND BURRELL IVES HUMPHREYS, PROSECUTOR OF PASSAIC COUNTY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
July 2, 1975.
*317 Mr. Philip H. Mizzone, Jr. for plaintiff.
Mr. Burrell Ives Humphreys, Prosecutor of Passaic County, for defendants Clinton E. Cronin and Burrell Ives Humphreys (Mr. John P. Goceljak, Assistant Prosecutor, on the brief.)
Mr. Martin Verp, Passaic County Counsel, for defendant Board of Chosen Freeholders of Passaic County.
DOAN, J.S.C.
Plaintiff brings this action in lieu of prerogative writs seeking judgment: (a) declaring null and void his termination as a Passaic County investigator, (b) compelling his reinstatement to that position, (c) declaring him tenured in the position, and (d) awarding him counsel fees and costs.
The basic facts are neither disputed nor complex. On June 16, 1951 plaintiff was appointed a special investigator for the Passaic County Prosecutor's Office by then Prosecutor Donald G. Collester. The appointment was denoted "unclassified." Thereafter, pursuant to L. 1951, c. 274 (N.J.S.A. 2A:157-10), plaintiff was designated a county investigator by Prosecutor Collester on September 12, 1951 and continued as such until receipt from then Acting Prosecutor Clinton E. Cronin of a notice of termination, dated June 13, 1975, effective June 20, 1975. Defendant Humphreys, who took office as Passaic County Prosecutor on June 23, 1975, has notified plaintiff that he will not reappoint him as a county investigator.
*318 From August 11, 1946 to December 9, 1953 plaintiff served as a volunteer fireman in the Borough of West Paterson. On December 17, 1953 he received an exempt fireman certificate from the West Paterson Fire Co. No. 1 which was filed in the Passaic County Clerk's office the following day, December 18, 1953.
Letter opinions of then county counsel dated February 10, 1954, addressed to the board of freeholders, and May 6, 1970, addressed to plaintiff, concluded that Muccio had acquired tenure as a county investigator by virtue of R.S. 40:47-60 (entitled "Tenure of exempt firemen"). Plaintiff so claimed in a letter to Prosecutor Collester dated January 19, 1954. This claim was subsequently forwarded to the board of freeholders who, in turn, notified the Civil Service Commission, by letter dated March 9, 1954, of it and the confirming opinion of county counsel (that dated February 10, 1954). The Commission, after noting receipt of the transmitted materials on Muccio's file, concluded it had no jurisdiction over R.S. 40:47-6 matters and took no action thereon.
Cross-motions for summary judgment have been filed. At oral argument defendants questioned whether plaintiff had served continuously since 1951 without reappointment, as he claimed, and whether the exempt fireman certificate was duly issued. N.J.S.A. 40A:14-55, 56 and 59; R.S. 40:47-52, 53 and 58. However, for purposes of their motion, these facts were conceded.
Plaintiff contends he has tenure as an exempt fireman under N.J.S.A. 40A:14-64 and that he cannot be removed absent a finding of good cause made after a fair and impartial hearing. Defendants posit that the Exempt Firemen's Tenure Act is inapplicable and Muccio is subject to summary removal by any incumbent prosecutor, N.J.S.A. 2A:157-10.

I
Initially, judgment dismissing the complaint must be entered in favor of defendant board of chosen freeholders inasmuch *319 as it lacks any authority to continue plaintiff in his position or to reappoint him to it. Cetrulo v. Byrne, 31 N.J. 320 (1960); N.J.S.A. 2A:157-10. In Cetrulo it was said:
The Legislature as well as the courts have long recognized the strong policy considerations which dictate that since the county prosecutor is charged with heavy enforcement responsibilities he must be given broad powers to appoint his own personnel; thus he appoints his own assistant prosecutors and investigators within the maxima prescribed by statute * * *. * * * Nowhere have we found any statutory language which supports the notion that an outside legislative agency such as the board of freeholders has the right to appoint assistants to the prosecutor * * *. [at 329]
Though Cetrulo dealt specifically with the freeholders' inability to appoint legal assistants, the holding there was clearly intended to apply to other assistive positions such as investigator and is dispositive of the action against the board here.

II
We turn, then, to the heart of the controversy. N.J.S.A. 40A:14-64 pertinently reads as follows:
Whenever an exempt fireman holds a * * * county * * * office not created by the Constitution, he shall hold such office during good behavior and shall not be removed unless for good cause after a fair and impartial hearing, provided he has or shall have served in said office for a term of 3 [three] consecutive years * * *.
Since N.J.S.A. 2A:157-10 denotes county investigator as an "office or position" the above statute seems applicable to Muccio's case. Furthermore, even were it not an "office" for 40A:14-64 purposes, plaintiff's circumstances could bring him within N.J.S.A. 40A:14-60, which provides:
Whenever any person possessing an exempt fireman certificate holds an office, position or employment of * * * a county * * * for an indeterminate term, such person shall hold his office, position or employment during good behavior and shall not be removed therefrom for political reasons but only for good cause after a fair and impartial hearing.
*320 These two statutes find their immediate source in R.S. 40:47-60, 63 and 64; L. 1911, c. 212; L. 1938, c. 385. N.J.S.A. 40A:14-64 is an amalgam of R.S. 40:47-63 and 64 of the old statutory scheme and employs similar language. N.J.S.A. 40A:14-60 combines elements of R.S. 40:47-60 and 63 with the language paralleling R.S. 40:47-63. Substantively, the protection afforded holders of exempt fireman certificates is the same. As the Appellate Division said in Bialkowski v. Ridgefield, 120 N.J. Super. 194 (1972):
Contrary to the contention of the plaintiff, there is nothing in the 1970 revision of Chapter 47 of Title 40, and specifically the sections dealing with tenure of persons holding exempt fireman certificates * * * which indicates any legislative intent to "change the pre-existing scheme." [at 197]
It appears evident that were this the only body of law to be applied to the instant facts, plaintiff would prevail. Plaintiff is a holder of an exempt fireman certificate who has occupied the county position to which he was appointed continuously for over 24 years. It is not necessary that he have had the certificate when appointed, Grimm v. Sussex Bd. of Chosen Freeholders, 118 N.J.L. 210 (Sup. Ct. 1937), and it has been held that a term coextensive with the appointing agency's pleasure, as is the case under N.J.S.A. 2A:157-10, is an indefinite one for purposes of the Exempt Firemen's Tenure Act, Maxwell v. Wildwood, 111 N.J.L. 181, 184 (Sup. Ct. 1933). The requirements of the act have patently been met here and tenure would normally attach in the absence of other considerations.
Other considerations exist, however. Our courts have long recognized the existence of exceptions to the scope of general tenure acts. As noted in Brennan v. Byrne, 31 N.J. 333 (1960):
It is well settled that the general terms of [the Veterans' Tenure Act] may not properly be applied to employments under later specific enactments which adequately evidence a legislative purpose of excluding them from its tenure protection. [at 337]
*321 The provisions of the Veterans' and Exempt Firemen's Tenure Acts being equatable as to form and substance, Maxwell, supra 111 N.J.L. at 184, it follows that the restriction to the former's applicability enunciated in Brennan pertains to the latter as well. See Ackley v. Norcross, 122 N.J.L. 569 (Sup. Ct. 1939), aff'd o.b. 124 N.J.L. 133 (E. & A. 1940).
Brennan concerned a terminated county investigator claiming veteran's tenure in his reinstatement effort. Though lengthy, quotation of the court's rationale in rejecting that claim is appropriate:
In 1931 the Legislature adopted a supplement to earlier enactments relating to county detectives in counties of the first class * * *; it expressly authorized prosecutors in counties of the first class to appoint county investigators * * * and it provided that county investigators shall hold office at the pleasure of the prosecutor and shall be excluded from the classified service under the Civil Service Act. See L. 1931, c. 164. A statement attached to the bill which * * * became L. 1931, c. 164 noted that the prosecutor's appointees would hold office "only during the pleasure of the prosecutor" and that the bill gave to the prosecutor the right to appoint during his term "persons in whom he has the degree of confidence resulting from personal, intimate knowledge" [The court then reviewed provisions dealing with a veteran investigator's eligibility for a detective position.] In 1937 the aforementioned provisions were carried over into the Revised Statutes. See R.S. 2:181-6, 2:181-4. In 1951 the Legislature adopted an act revising the law concerning county detectives and county investigators and repealing certain enactments including R.S. 2:181-6 and R.S. 2:181-4. See L. 1951, c. 274, N.J.S.A. 2A:157-1 et seq. This revision provided for the appointment of county detectives in the classified service of the civil service and for the appointment in the unclassified service of county investigators to serve at the pleasure of the prosecutor and subject to removal by him. L. 1951, c. 274, p. 944; N.J.S.A. 2A:157-10. [The court again referred to the eligibility of veterans employed as county investigators for county detective appointments.]
All of the foregoing enactments were subsequent to the adoption of our present Veterans' Tenure Act. L. 1907, c. 14; N.J.S.A. 38:16-1. They evidence to us the clear legislative purpose and plan of affording to the county prosecutor a confidential investigatory staff serving at his pleasure and removable at his will notwithstanding the terms of any earlier tenure enactments. Thus the 1931 enactment pointedly stipulated not only that the county investigator should hold office at the prosecutor's pleasure but also that he should be excluded from the classified service which would have given him tenure protection *322 under the Civil Service Act (L. 1931, c. 164) * * *; and while the comprehensive 1951 revision continued the protection of county detectives under the Civil Service Act, it deliberately reaffirmed the legislative intent of withholding tenure protection to county investigators by placing them in the unclassified service of the civil service * * * and directing that they shall serve at the pleasure of the prosecutor and be subject to removal by him. See L. 1951, c, 274, p. 944; N.J.S.A. 2A:157-10. [31 N.J. 335-336; emphasis supplied]
Finding these legislative expressions to embody "adequate evidence of a legislative intent to afford a power of removal free from the provisions of earlier tenure statutes," the court (at 338) held the Veterans' Tenure Statute inapplicable and that plaintiff had been properly removed.
As earlier noted, the Veterans' Tenure Act and the Exempt Firemen's Tenure Act are similar in substance and language. Further, the 1951 revision of the county detectives' and investigators' law followed the 1938 revision of the Exempt Firemen's Act which was in effect when plaintiff was appointed and Brennan decided. The language and rationale of that case, then, make manifestly clear that at that time the Exempt Firemen's Act, like the Veterans' Tenure Act, did not cloak county investigators with tenure.
Plaintiff's brief implicitly concedes this. He argues, however, that amendments to the Exempt Firemen's Act in 1967 and 1970 and its reenactment into its present form in 1971 override the Brennan holding and reveal a legislative intention that the position of county investigator is not to be excluded from the Exempt Firemen's Act's coverage. Stress is laid on the language in Brennan observing that the specific enactments evidencing the exclusionary legislative purpose were subsequent the enactment of the Veterans' Tenure Act there under consideration and stating that the general terms of that act may not be applied to employments "under later specific enactments which adequately evidence a legislative purpose of excluding them from its tenure protection." 31 N.J. at 336 (emphasis supplied). Noting that similar phraseology was utilized in Perrella v. Jersey City Bd. of Ed., 51 N.J. 323, 339 (1968), and Schroeder v. Essex Cty. *323 Bd. of Freeholders, 63 N.J. 124, 126 (1973), it is argued that the reversed chronology of the specific act, N.J.S.A. 2A:157-10, and the general Firemen's Act occasioned by the latter's 1971 revision and reenactment necessitates a finding that the Legislature intended to reverse Brennan as to exempt firemen; that county investigators are intended to be covered by the Firemen's Act and that Muccio is so tenured.
Plaintiff's emphasis on chronology is misplaced. The central inquiry in Brennan and the cases therein cited and following is whether the total legislative scheme before the court reveals a purpose and intent to exclude a particular employment from the protections afforded by a general tenure statute. The answer requires examination of the purpose and intended effect of the pertinent statutes as expressed by the Legislature in the statutory language, context, legislative history and other relevant circumstances bearing thereon in light of the pertinent rules of statutory construction. Chronology of passage is but one factor to be considered in gleaning the legislative will, and it cannot be deemed conclusive. To give later passage the effect urged by plaintiff would be to abdicate the court's responsibility in such instances. As recently restated in Lawrence v. Butcher, 130 N.J. Super. 209 (App. Div. 1974):
Where statutes in some apparent conflict relate to the same subject matter, it is the duty of the court to construe them together as a unitary and harmonious whole insofar as that may be possible in order that each may be fully effective. Clifton v. Passaic Cty. Bd. of Taxation, 28 N.J. 411, 421 (1958). [at 212]
No preliminary drafts, reports, hearings, annexed statements of purpose or other such express indication of the Legislature's intentions regarding the 1971 revision and reenactment of the Exempt Firemen's Tenure Act has been offered by counsel or uncovered by the court's own research. Resort must be made, then, of the maxims of construction which embody reasonable inferences as to legislative intent. *324 In re Posey, 89 N.J. Super. 293, 304 (Cty. Ct. 1965), aff'd o.b. 92 N.J. Super. 259 (App. Div. 1966).
Initially,
It is familiar law that where a statute construed by the courts has been reenacted in the same or substantially the same terms, the Legislature is presumed to have been familiar with its construction, and to have adopted it as part of the law, unless it expressly provides for a different construction [Cox v. Hruza, 54 N.J. Super. 54, 61 (App. Div. 1959)]
And in In re Keogh-Dwyer, 45 N.J. 117 (1965), the court noted in construing the election laws:
* * * The election laws have been amended several times since 1930 but no substantial change has been made in the pertinent requirements of the statutes since In re Lavallette, supra [9 N.J. Misc. 25]. In construing a statute it is to be assumed that the legislature is thoroughly conversant with its own legislation and the judicial construction placed thereon. Barringer v. Miele, 6 N.J. 139, 144 (1951). And the construction of a statute by the courts, supported by long acquiescence on the part of the Legislature or by continued use of the same language or failure to amend the statute, is evidence that such construction is in accord with the legislative intent. [at 120]
See Egan v. Erie R. Co., 29 N.J. 243, 250 (1959); Lemke v. Baily, 41 N.J. 295, 301 (1963); Bialkowski v. Ridgefield, 118 N.J. Super. 354, 358-359 (Law Div. 1972), aff'd 120 N.J. Super. 194 (App. Div. 1972); 82 C.J.S. Statutes § 370(b) at 848. "The rule applies in the construction of a statute enacted after a similarly [worded] or cognate statute has been judicially construed". Ibid. at 851. Cf. In re Posey, supra; Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 137-138 (1958) (where, in construing the term "injury by accident" in the Workman's Compensation Act, the court presumed the Legislature intended the antecedent construction given a similar clause in the English prototype by the English courts).
Comparing R.S. 40:47-60, 63 and 64 with N.J.S.A. 40A:14-60 and 64, one finds that while there are differences *325 in arrangement, phraseology and sentence structure, the sum and substance are the same. As respectively observed by the two tribunals in Bialkowski, supra, "the language and context of [the latter] do not reveal * * * a radical departure from [the former]," 118 N.J. Super. at 358, nor "any legislative intent `to change the pre-existing scheme'," 120 N.J. Super. at 197. As earlier noted, much of the key language is similar. The Legislature may be presumed to know the judicial effect given the language of the Veterans' Tenure Act and the Firemen's Act's linguistical parallelism thereto. The absence of any radical alteration in the language of N.J.S.A. 40A:14-60 and 64 expressing legislative repudiation of Brennan, or a comment or statement annexed to the bill so doing, is indicative that the result there is in accord with the legislative intent as to 40A:14-60 and 64. Nor are the technical changes made sufficient to constitute such a disavowal:
While the Revision is a wholly independent enactment and supersedes all pre-existing general laws, State v. Czarnicki (Supreme Court 1940), 124 N.J.L. 43, 45; nevertheless, it is the rule that a rearrangement of the statutes, in a general revision of the law, does not change the statute's significations. Pomeroy v. Mills (Court of Errors, 1883), 37 N.J. Eq. 578, 580. Moreover a mere change in words or phraseology in a general revision does not change its effect, unless there is evidence of a legislative intention to work a change. Leonard v. Leonia Heights Land Co. (Court of Errors and Appeals, 1913) 81 N.J. Eq. 489, 492.
There is a presumption against legislative intent to effect a change in substance by a revision of the general laws. Mere changes in phraseology and even omissions of words, does not of necessity overcome the presumption. The intention to effect a change in substance must be expressed in language excluding a reasonable doubt * * *. [Murphy v. Zink, 136 N.J.L. 235, 244-245 (Sup. Ct. 1947), aff'd o.b. 136 N.J.L. 635 (E. & A. 1947)]
See Greggio v. Orange, 69 N.J. Super. 453, 476 (Law Div. 1961), aff'd o.b. 37 N.J. 462 (1962). Further indicative of the Legislature's view of the 1971 reenactment is N.J.S.A. 40A:1-5, which provides that
*326 The provisions of Title 40A not inconsistent with those of prior laws shall be construed as a continuation of such laws.
Nothing, then, in either the passage or content of the 1971 reenactment of the Exempt Firemen's Tenure Act permits reasonably inferring an intent on the Legislature's part to overrule Brennan and allow county investigators tenure as exempt firemen. All presumptions and indicators lead to the opposite conclusion of continued nonapplicability.
This conclusion is further buttressed by utilization of the constructionary rule that where one statute deals with a subject in general and comprehensive terms and another deals with a portion of the same subject in a more minute and definite way, any unharmonizable conflict between the two will be resolved in favor of the latter's prevalence, absent a contrary legislative intent appearing. Kingsley v. Wes Outdoor Advertising, 55 N.J. 336, 339 (1970), Lawrence v. Butcher, supra 130 N.J. Super. at 212; 82 C.J.S. Statutes § 369 at 839. The rule has been employed as a tool in determining tenure questions such as that here: Brennan, supra, 31 N.J. at 337-338; Perrella, supra, 51 N.J. at 339; Ackley v. Norcross, supra, 122 N.J.L. at 572. It may, in fact, be argued that the tenure rule, earlier quoted from Brennan, 31 N.J. at 337, is merely a particularized variant of the general rule. "* * * The rule is applicable without regard to the respective dates of passage." 82 C.J.S. Statutes at 843. The author there continues:
It is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act, and thus conflict with it, the special act will be construed as an exception to, or qualification of, the general statute, whether it was passed before or after such general enactment. * * * where the general statute is later; the special statute will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication. [at 843-844]
See Smith v. Livingston Tp., 106 N.J. Super. 444 (Ch. Div. 1969), aff'd o.b. 54 N.J. 525 (1969) (the general initiative provisions of the Faulkner Act, L. 1950, c. 210, p. 460, were *327 held subordinate to the more detailed provisions of the Zoning Act, N.J.S.A. 40:55-35, enacted in 1948); Ackley, supra.
Applying the foregoing to the instant facts leads to a conclusion of nontenure. N.J.S.A. 40A:14-60 and 64 are general in language and scope, making no specific reference to county investigators. N.J.S.A. 2A:157-10, unchanged since Brennan, deals specially with county investigators' appointment, removal, salary and duties. The provisions of N.J.S.A. 2A:157-10, then, are to be considered an exception to the general provisions of N.J.S.A. 40A:14-60 and 64, the court having previously found no intention on the part of the Legislature to make the general act controlling. That being so, the Exempt Firemen's Tenure Act cannot shield plaintiff from termination.
The court also takes cognizance of the failure of the Legislature to enact bills introduced in the 1971, 1972 and 1974 sessions (the latter two, of course, being subsequent to the 1971 reenactment of the Exempt Firemen's Tenure Act) which would have amended N.J.S.A. 2A:157-10 to place county investigators in the classified and tenured status of the Civil Service. This, along with the failure to otherwise alter that statute, evidences that the legislative purpose and plan found in Brennan of affording the county prosecutor a confidential investigatory staff serving at his pleasure and removable at his will notwithstanding the terms of any tenure enactments, remains unchanged and viable.
For the foregoing reasons, it is the conclusion of the court that the Exempt Firemen's Tenure Act, N.J.S.A. 40A:14-60 and 64, does not operate to confer tenure on county investigators who hold exempt fireman certificates and that such investigators serve at the pleasure of the incumbent prosecutor and are subject to removal by him. N.J.S.A. 2A:157-10.

III
Plaintiff lastly contends that the letter opinions of prior county counsel, finding him tenured and which were *328 unquestioned during his long period of service under numerous prosecutors, operate to estop the incumbent prosecutor from taking a contrary position and terminating him. The court has considered this and finds it totally devoid of merit.
Accordingly, the motion of defendants Cronin and Humphreys for summary judgment is granted and that of plaintiff denied.
Judgment of dismissal is entered in favor of defendant Board of Chosen Freeholders of Passaic County.