744 A.2d 244

HATTIE SMITH, PETITIONER–APPELLANT, v. JOHN
L. MONTGOMERY NURSING HOME,
RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 1, 1999—Decided January 31, 2000.

576

[redacted]

Before Judges KESTIN, WEFING and STEINBERG.

*Thomas W. Polaski* argued the cause for appellant (*Robert A. Olkowitz*, attorney; *Mr. Olkowitz*, on the brief).

*John T. Lane, Jr.* argued the cause for respondent (*Dowd & Reilly*, attorneys; *Mr. Lane*, on the brief).

The opinion of the court was delivered by

WEFING, J.A.D.

Petitioner Hattie Smith appeals from a judgment entered in the Division of Workers' Compensation. We affirm.

Petitioner worked as a nurse's aide at respondent's facility. She alleged that she slipped and fell on July 12, 1990 and injured herself while at work. She alleged a further incident of January 2, 1992 in which she fell while trying to assist a patient. Petitioner filed separate claim petitions for these incidents and also filed a claim petition alleging an aggravation of her injuries through occupational exposure.

Petitioner underwent an extensive course of treatment for her injuries, including a cervical spinal fusion and shoulder surgery. Petitioner returned to work after both incidents on a light duty basis. Petitioner experienced significant pain and discomfort,

however, and, at her doctor's direction, ceased working in October 1992. She has not returned to respondent since.

The thrust of petitioner's case was that she had been left totally and permanently disabled as a result of these incidents. Based upon that premise, at the outset of the proceeding, the parties advised the judge of compensation that the claim petitions referring to the specific incidents of July 12, 1990 and January 2, 1992 would be dismissed and the matter would proceed under the final claim petition which alleged an aggravation of all prior injuries. Under this approach, the question to be tried was the nature and extent of petitioner's permanent disability.

Petitioner was examined by several physicians, one of whom, Dr. Krengel, testified on her behalf. Dr. Krengel's report, dated September 11, 1996, expressed the opinion that petitioner was totally and permanently disabled. Dr. Krengel's report also estimated that petitioner had suffered an orthopedic disability of ninety percent of partial total.

Petitioner initially testified on July 15, 1997. She told the judge of compensation that the only work she felt she would be able to perform was several hours a day as a telemarketer, provided she could get up and move around on occasion. Dr. Krengel testified in September 1997. Based upon petitioner's testimony that she was actively seeking work, Dr. Krengel was no longer of the view that she was totally and permanently disabled but did adhere to his opinion of ninety percent of partial total disability.

Dr. Flicker examined petitioner on behalf of respondent. His report, dated October 23, 1997, expressed the opinion that petitioner was totally disabled both orthopedically and psychiatrically. He wrote:

[m]uch of her limitation falls in the orthopedic sphere, but I feel there is a tremendous element of psychosomatic superimposition which caused the patient to be out of work for five (5) years. . . .

Dr. Flicker noted at the bottom of his report that petitioner had returned to work one week earlier.

That was a development that was apparently unknown to any of the participants in this proceeding and petitioner was recalled to testify on November 18, 1997. She explained to the judge of compensation that she had obtained a position doing light duty cleaning for some twenty hours a week. Dr. Flicker testified in February 1998; he expressed the opinion that petitioner's return to work demonstrated that she was not totally and permanently disabled.

The judge of compensation issued a written decision on March 3, 1998. His ultimate conclusion was that petitioner had permanent partial total disability of fifty-five percent, which he allocated among her various injuries; her net award was $39,366.

On appeal, petitioner's arguments are, in essence, that the judge of compensation erred when, in his written opinion, he set aside the voluntary dismissals of the earlier claim petitions and did not decide the case solely on the nature and extent of her permanent disability; that he erred in his assessment of the evidence presented; and that he was biased against petitioner.

We see no reversible error. As to the first issue, the analytical structure proposed by the parties at the outset of the matter was based upon petitioner's alleged total inability to work. That analytical structure proved impossible to employ once it developed that petitioner had, in effect, resumed some employment.

A trial court should not be bound by the manner in which the parties frame the issue if subsequent evidence demonstrates that the parties' initial formulation was incorrect. A trial court may "decide a case on any point raised by the pleadings and evidence, whether or not insisted on by the parties." 89 *C.J.S.* Trial, § 603. It is of no moment, in the context of this case, that the parties initially agreed to this procedure; not all agreements of the parties are binding upon the court. 83 *C.J.S.* Stipulations, § 17. Indeed, that parties may have stipulated to a fact does not necessarily preclude a court from finding, after examining the

record, that the "fact" is untrue. *Macklin v. Kaiser Co.,* 69 *F.Supp.* 137 (D.Or.1946).

■ Petitioner's remaining arguments are equally unpersuasive. The judge of compensation carefully explained why he considered certain medical conclusions more persuasive than others. That he gave more weight to the opinion of one physician as opposed to the other provides no reason to reverse this judgment. Finally, petitioner's complaints of bias are unsupported. There is no merit to her contention that the judge of compensation was precluded from utilizing his observations of petitioner's courtroom conduct and movements over the course of the proceedings in reaching his decision about the extent of her disability.

The judgment under review is affirmed.